UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00147 HBB

ANGELA MELSON                                                              PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                          DEFENDANT

## MEMORANDUM, OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Angela Melson ("Plaintiff"), seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 15) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).  By Order entered February 16, 2016 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance and Supplemental Security Income Benefits on January 24, 2013 (Tr. 326, 333).  Plaintiff alleged that she became disabled on August 1, 2012 as a result of coronary artery disease (Tr. 326, 360).  Administrative Law Judge Karen R. Jackson ("ALJ") conducted a video hearing on May 8, 2016 (Tr. 186).  The ALJ was in Lexington, KY, and Plaintiff was present in Campbellsville, KY and represented by M. Gail Wilson (Id.).  Also present and testifying was vocational expert Martha Goss (Id.).[1]

In a decision dated July 18, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 122, 126).  At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date (Tr. 127).  At the second step, the ALJ determined that Plaintiff's coronary artery disease, chronic obstructive pulmonary disease, and hypertension are "severe" impairments within the meaning of the regulations (Tr. 128).  Also at the second step, the ALJ determined that Plaintiff's hyperlipidemia, gastroesophageal reflux disease, and medically determinable mental impairments are "non-severe" impairments within the meaning of the regulations (Id.).  At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 129).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform sedentary work (Id.).  More specifically, the ALJ found that Plaintiff has the following limitations.  She can only occasionally climb ramps or stairs; can never climb ropes, ladders, or

---

[1] While the hearing transcript phonetically describes the vocational expert's name as "Dawes" (Tr. 186), the undersigned notes that the expert's resume indicates her name is "Goss" (Tr. 318).

2

scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid temperature extremes, fumes, dust, odors, gases, poor ventilation, and certain hazards; and must avoid full-body vibration (Id.).  Relying on testimony from the vocational expert, the ALJ found that Plaintiff is able to perform her past relevant work as a credit clerk, payroll clerk, receptionist, and billing clerk (Tr. 131).

Although the ALJ determined Plaintiff could perform her past relevant work, she made alternative findings at the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 131-32).  The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 132).  Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 1, 2012 through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 81-84).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).


CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.

Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12)

4

months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.  The ALJ determined that, despite her severe impairments, Plaintiff is capable of performing her past relevant work as a credit clerk, billing clerk, payroll clerk, and receptionist both as performed and as performed generally (Tr. 131).  Relying on testimony from a vocational expert, the ALJ concluded that Plaintiff's past relevant work requires only sedentary levels of exertion and therefore does not conflict with any

of the limitations caused by Plaintiff's impairments (Id.).  Moreover, the ALJ concluded that, in addition to her past relevant work, a significant number of jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and residual functional capacity when considered in conjunction with the medical-vocational rules (Id.).  Representative occupations that the ALJ concluded Plaintiff could perform include those of information clerk, general clerk, and assembler/benchworker (Tr. 131-32, 209).

The Plaintiff challenges the Commissioner at Findings Nos. 5, 6, and 7 (DN 15 at p. 3). Specifically, the Plaintiff argues that the ALJ did not follow the treating physician rule by not affording substantial weight to the opinions of Plaintiff's cardiologist, Dr. Natarajan Thannoli (Id.) and in affording little weight to Nurse Sandra Irvin (Id. at p. 2).

In response, the United States argues that Dr. Thannoli's opinion is not sufficiently supported by evidence in the medical record (DN 19 at p. 8-10).  The United States notes that the ALJ discussed the Plaintiff's medical record, and found several inconsistencies with Dr. Thannoli's opinion (Id.).  Based on these inconsistencies, the United States argues that the ALJ's decision is reasonable and based on substantial evidence (Id.).

Here, neither party disputes Dr. Thannoli's status as a treating physician.  Thus, the issue becomes whether the ALJ should have afforded his testimony controlling weight.  In general, an Administrative Law Judge must give a medical source controlling weight if two conditions are satisfied.  First, the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and second, the opinion must not be inconsistent with other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(c)(2) 416.927(c)(2).  The Commissioner must provide good reasons for discounting the weight given a treating source.

6

Gayheart v. Comm'r of Soc. Sec, 710 F.3d 365, 375 (6th Cir. 2013). "This procedural requirement insures 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Id. at 376.

If the ALJ decides not to afford the treating source controlling weight, she then applies factors from the regulations to determine the appropriate amount of weight to give the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion when compared with other evidence in the record, and the treating source's area of specialty. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(5), 416.927(c)(2)(i)-(ii), (c)(3)-(5); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

In this case, the ALJ discussed Dr. Thannoli's findings and found them unsupported by and inconsistent with the medical record. First, the ALJ discussed Dr. Thannoli's restrictive description of Plaintiff's abilities, including that she could only sit for two hours in an eight-hour work day, needed a ten or fifteen minute break every thirty minutes, and must be allowed to switch between sitting and standing at will (Tr. 130, 625). The ALJ recognized that this opinion lacked support, and was contradicted by, the objective medical record (Tr. 130).

For instance, Drs. Gedmark and Saranga opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently as well as stand or walk for six hours in an eight-hour day (Tr. 220-21, 242). Notably, the ALJ adopted an even more restrictive residual functional capacity than that opined by the state examining physicians (Tr. 129). Additionally, the ALJ found the objective evidence expressed in the ECHO Doppler imaging to be at odds with Dr. Thannoli's opinion (Tr. 130, 625). Specifically, while the ALJ acknowledged that the Plaintiff

7

exhibited signs of severe one vessel coronary artery disease with mild inferior wall hypokinesis, the ECHO Doppler imaging conducted the following month was normal except for trivial to mild tricuspid regurgitation (Tr. 130, 625).

The report from an examination performed in October of 2012, roughly two months after the alleged onset of Plaintiff's disability, is also inconsistent with Dr. Thannoli's highly restrictive evaluation (Tr. 442). The examination indicates, and the ALJ's decision discusses, that the Plaintiff had a heart murmur, but normal S1 and loud S2 heart sounds, clear lungs, an unremarkable neurologic examination, normal peripheral pulses, and no clubbing, edema, or cyanosis (Tr. 130, 442). These findings were echoed in Plaintiff's May 2014 examination, which revealed no respiratory distress, normal breath sounds, and no rales (Tr. 130, 616).

The ALJ acknowledged Plaintiff's high blood pressure, but concluded that the Plaintiff successfully managed the condition using medication (Tr. 130). In fact, the Plaintiff's last blood pressure reading was 122/80 (Tr. 130, 616). The Sixth Circuit has upheld findings of no disability where the claimant successfully managed their condition with medication. Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ thoroughly discussed her reasons for discounting Dr. Thannoli's assessment. She outlined several instances where the medical evidence directly contradicted Dr. Thannoli's findings. Her decision satisfies the two-part test outlined above and properly considers the factors promulgated in the regulations. Therefore, the undersigned concludes that the ALJ's decision is supported by substantial evidence and complies with all applicable law.

The Plaintiff additionally argues that the ALJ erred in not affording substantial weight to the opinion of Sandra Irvin (DN 15 at p. 5). The Plaintiff does not develop this argument except

to say that "[e]ven though she is not a physician, the opinions that she gave after treating Ms. Melson should have been given more weight than those of non-examining physicians" (Id.).  It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Layne, 192 F.3d 556,566 (6th Cir. 1999).  As Plaintiff has failed to develop this argument, the undersigned considers the argument waived.

However, though the argument has been waived, the undersigned additionally notes that the ALJ discussed the fact that Sandra Irvin is a nurse practitioner (Tr. 130) and is therefore not an acceptable medical source under the regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, nurse practitioners are one of several types of "medical sources" that are classified as "other sources" evidence.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  Applying the applicable law to the evidence in the record, the treating source rule does not apply to Ms. Irvin because she is a nurse practitioner.  20 C.F.R. §§ 404.1502, 404.1513(a) and (d), 404.1527(c), 416.902, 416.913(a) and (d), 416.927(c).  Thus, though the argument was waived, the undersigned nonetheless concludes that the ALJ properly afforded little weight to Ms. Irvin's opinion.

<u>ORDER</u>

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and judgment is granted for the Commissioner.

Copies:        Counsel